IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN RE:

Application of RICARDO IV MONTILLA,

Applicant,

8:19CV549

MEMORANDUM AND ORDER

Ricardo IV Montilla has applied for an order allowing him to serve discovery on A.G. Processing Incorporated ("AGP"), for the purpose of assisting tribunals in Venezuela. AGP is an Iowa corporation with its principal place of business in Omaha, Nebraska. The application is made pursuant to the authority granted to the United States courts under 28 U.S.C. § 1782. This court has jurisdiction over Montilla's Application.

Montilla filed his Verified Ex Parte Application on the court's public docket. (Filing No. 1). AGP became aware of the filing and, with leave of the court, responded. The court filings on Montilla's Application now include the Application and supporting brief, (Filing Nos. 1 & 1-1); an opposition brief with supporting evidence, (Filing No. 10); a reply brief and supporting evidence, (Filing Nos. 13 & 14); a surreply brief and surreply evidence, (Filing No. 18); and a sur-surrely brief (Filing No. 19-1). While this court need not permit a surreply or sur-surreply, particularly with additional evidence, (see NECivR 7.1(c)), in the interest of reaching a fully informed decision, I have considered all the briefing and admissible evidence filed. Upon that review, for the reasons stated below, the Application will be denied.

THE APPLICATION

Montilla's Application states he is a minority shareholder in Proagro C.A. ("Proagro"), a Venezuelan animal feed conglomerate, and Protinal, C.A. ("Protinal), a holding company which owns shares in Proagro. (Filing No. 1, at CM/ECF pp. 3-4). Montilla alleges that in the fall of 2015, AGP (the largest shareholder of Proagro and the majority shareholder of Protinal) transferred AGP's shares in Protinal and Proagro to AGP-related entities, and Proagro transferred treasury shares to an AGP-controlled entity. (Filing No. 1, at CM/ECF pp. 5-7). Montilla believes that in 2017, the AGP-controlled entities which received Protinal/Proagro shares from AGP transferred those shares to third parties, thereby completing AGP's plan to fully divest its interest in Protinal and Proagro. (Filing No. 1, at CM/ECF p. 7-8). Montillo alleges these share transfers violated Protinal and Proagro bylaws and Venezuelan securities laws, and minority shareholders were harmed by these unauthorized and unlawful transfers. (Filing No. 1, at CM/ECF p. 5).

On December 8, 2015, Montilla filed an administrative complaint with Venezuela's National Securities Superintendent, Superintendencia Nacional de Valores ("SUNAVAL"), claiming the share transfers were a public offer and SUNAVAL's prior approval was therefore necessary. Montilla alleged the transfers were made in violation of Venezuela's Securities Market Act, including the obligations of prior notice and approval of transactions between interrelated entities. AGP was not a party to the administrative action filed before the SUNAVAL. (Filing No. 1, at CM/ECF pp. 8, 12).

SUNAVAL performed an investigation, and found evidence that the stockbroker who facilitated the transfer of Proagro shares did not possess documentary support for those transfers, the transferee entities were interrelated,

2

and the Caracas Stock Exchange failed to comply with its information, notices, alerts and stop-trading duties with respect to the high-volume trade of Proagro shares on the relevant dates. (Filing No. 1, at CM/ECF p. 9). SUNAVAL opened an administrative procedure in April of 2016. It issued an order on June 13, 2018, concluding there was no basis to take action against Proagro for alleged violations of Venezuelan securities laws. (Filing No. 1, at CM/ECF p. 10).

Montilla disagreed with SUNAVAL's conclusion, and he filed an Administrative Action seeking a writ of annulment in The Second Court on Contentious-Administrative Matter of Venezuela ("Second Court") on August 1, 2018. (Filing No. 1, at CM/ECF p. 10). In the Administrative Action, Montilla claimed SUNAVAL failed to consider its own prior inspections. He also claimed SUNAVAL erred by failing to consider information provided by minority shareholders, and it failed to notify AGP of the action or obtain documentary or testimonial evidence that was necessary for full consideration of the issues, including evidence from AGP and its related entities who received Proagro and/or Protinal shares. (Filing No. 1, at CM/ECF p. 10-11). Under Article 84 of the Contentious Administrative Jurisdiction Act of Venezuela, Montilla was allowed to submit evidence in the Administrative Action to void the SUNAVAL decision. (Filing No. 1, at CM/ECF p. 13).

Montilla's Application, filed on December 16, 2019, states the Administrative Action is "currently pending." (Filing No. 1, at CM/ECF p. 16). In addition to the Administrative Action, Montilla's Application states he intends to file an Accounting Action and an Annulment Action in Venezuela after AGP produces the discovery requested in his Application. Montilla has retained Gonzalo Salima Hernandez of the Salima Palazzi law firm in Caracas, Venezuela to assist in litigating the actions. (Filing No. 1, at CM/ECF p. 15; Filing No. 14-2).

According to the Application, the Accounting Action will be filed under Article 673 of the Civil Procedure Code of Venezuela against Proagro's directors and managers regarding AGP's divestment of its stock in Proagro and Protinal, and Proagro's suspect purchases of commodities. ([Filing No. 1, at CM/ECF pp. 12-13](#)). The Application states the Annulment Action will be based on Article 18 of the Venezuelan Securities Market Act to annul AGP's transfers with respect to the Proagro Shares. ([Filing No. 1, at CM/ECF p. 14-15](#)). As to Proagro's sale of its treasury shares, the Annulment Action will be based on Article 45 of the Securities Market Act and Article 280 of the Commercial Code. Like ordinary lawsuits in Venezuela, Annulment Actions begin with service on the defendants and a 20-day answer deadline, followed by a discovery phase, the parties' respective submissions of written conclusions for the court's consideration, and a court decision on whether the share transfers were void. ([Filing No. 1, at CM/ECF p. 15](#)).

Montilla states that if his Application herein is denied, he will be unable to gather information explaining:

(1) the manner, reasons and grounds for the transfers of the Proagro shares without first offering the same to other shareholders,

(2) the extent of the relationship between AGP and the PPH Entities (the allegedly AGP-related entities),

(3) the role of Proagro's board of directors in the transfers of the Proagro shares,

(4) the beneficiaries of the trusts owning Proagro shares, and

(5) whether AGP, Proagro or any supplier of the latter artificially marked-up commodities to the detriment of Proagro's finances and its shareholders.

(Filing No. 1, at CM/ECF pp. 16-20). To address these issues, Montilla seeks leave to serve on AGP over 60 document production requests, six interrogatories, and a notice to depose an AGP corporate representative. Id. Montilla states the discovery is needed to obtain evidence of the transactions between AGP and the AGP-related and/or controlled entities[1] along with information about Proagro's transactions with several suppliers of commodities (e.g., corn, soybeans, soybeans oils, etc.) which occurred between 2013 and 2015, allegedly at above-market prices. (Filing No. 1, at CM/ECF p. 12).

STANDARD OF REVIEW

Pursuant to 28 U.S.C.A. § 1782, a United States district court may order a resident of that district to provide testimony or statements, or to produce documents for use in a foreign or international tribunal. The request for discovery can be made "upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court." 28 U.S.C.A. § 1782(a). "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." Id.

To pursue discovery under 28 U.S.C.A. § 1782(a), the application must be filed by an "interested person," seek documents and testimony from witnesses residing or located in the district where the application is filed, and request discovery for use in pending or reasonably contemplated proceedings before a

---

[1] The application refers to AGP-owned, "AGP-controlled" and "AGP-related" entities when describing the recipients of the alleged unauthorized share transfers. The question of whether Montilla is using these terms distinctively or synonymously is not material to this decision.

5

foreign tribunal. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 259 (2004); Schmitz v. Bernstein Liebhard & Lifshitz LLP, 376 F.3d 79, 83 (2d Cir. 2004) (identifying the three statutory requirements for § 1782 discovery requests). The statute is intended to provide an efficient means of using the United States federal courts to assist participants in international proceedings and thereby encourage, by example, foreign countries to similarly assist courts in the United States. In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir.1992).

Even when all requirements of 28 U.S.C.A. § 1782(a) are met, the court may, in its discretion, deny the application for discovery. In exercising this discretion, the court considers the "Intel Factors," to wit: 1) whether the person from whom discovery is sought is a participant in the foreign proceeding; 2) the nature of the foreign tribunal, the type of proceedings pending or contemplated in that forum, and whether the foreign government, court, or agency is receptive to assistance by a United States federal court; 3) whether the § 1782 request attempts to "circumvent foreign proof gathering restrictions or other policies;" and 4) whether the documents or testimony sought are "unduly intrusive or burdensome." Intel, 542 U.S. at 264–65.

ANALYSIS

Both Montilla and AGP have submitted evidence and briefing in support of their respective positions. Both filed declarations by Venezuelan lawyers in an attempt to explain how Administrative, Accounting, and Annulment actions are litigated in Venezuela. Unfortunately, as is often the case with United States lawyers, the Venezuelan lawyers do not appear to agree.

6

Montilla's Application asserts he has an interest in three Venezuelan proceedings: A pending Administrative Action, and two anticipated actions—an Accounting Action and an Annulment Action. Each of these actions challenges AGP's transfers of Proagra and Protinal stock, and Proagra treasure shares. Montilla, as a minority shareholder in Proagra and Protinal, is the named Plaintiff in the Administrative Action, and an interested person with respect to all three pending and anticipated actions. The first requirement of a § 1782 Application is clearly met.

The Application requests production of documents, interrogatory answers, and testimony from AGP, a resident of Nebraska. As such, the second requirement of a § 1782 Application is clearly met.

But assessing the third element of a §1782 Application—that the discovery will be used in pending or reasonably contemplated proceedings before a Venezuelan tribunal—requires a critical analysis of the facts presented. It is undisputed that the Accounting and Annulment Actions have not been filed. It is further undisputed that contrary to the statements within the Application, at the time the Application was filed in this forum, the Administrative Action was no longer pending before the Second Court.[2] (Filing No. 10-4). And it was not

---

[2] The parties argue over whether Montilla's Verified Application intentionally misrepresented that the Administrative Action was pending in Venezuela. Montilla claims he was not notified of the Second Court's ruling, entered on November 26, 2019, until January 16, 2020, and he immediately appealed. The Application was filed in this forum on December 16, 2019. For the purposes of the court's analysis, I need not and do not decide whether Montilla was not candid with this court when he filed his Application.

However, I do note that when Montilla was notified of the Second Court's adverse ruling on the Administrative Action, he did not immediately correct the material misstatement in his Application. Instead, AGP's response brief and evidence, filed on

pending before an appellate forum when the Application was filed: Montilla appealed the adverse ruling in the Administrative Action after he filed his Application for discovery from AGP. (Filing Nos. 10-5; Filing No. 14-2, at CM/ECF p. 3).

The parties' retained legal experts disagree regarding the likely outcome of that appeal process. But upon close reading of the declarations, AGP's experts assert Montilla will not be allowed to submit evidence before the Venezuelan appellate court(s), ((Filing No. 10-2, at CM/ECF p. 10; Filing No. 10-3, at CM/ECF pp. 5-6)), and Montilla's experts do not dispute this statement. See (Filing No. 14-1; Filing No. 14-2). Montilla's experts assert the Administrative Action is not fully dismissed because Montilla appealed it—that the current ruling is not a final judgment under Venezuelan law. But for the purposes of the Application before this court, the question is whether evidence is being requested "for use" in a pending or reasonably contemplated action in a foreign forum. None of the experts—on either side of this case—claim Montilla will be allowed to offer evidence obtained from AGP in the United States during the appeals process in Venezuela. As to the Administrative Action, the evidence requested is not currently useful to the Venezuelan court.

Montilla may be claiming reversal of the Second Court's adverse ruling is likely, and the evidence from AGP will be needed and used in the "reasonably contemplated" litigation on remand. But this court will not interpret the potential for reversal and remand as sufficient to prove Montilla reasonably contemplates

---

February 4, 2020, notified this court that the Administrative Action was not pending in Venezuela when Montilla filed his Application. The failure to promptly correct prior material misstatements can be construed as lack of candor to the tribunal.

litigating the Administrative Action at an evidentiary stage. If that reversal occurs, Montilla can then file an Application in this forum, if necessary.[3]

As to the Accounting and Annulment Actions, the primary question is whether these proceedings are not only contemplated, but reasonably so. Montilla claims the Accounting and Annulment Actions in Venezuela have not been filed because he needs the information from AGP.[4] The parties' respective experts appear to disagree on the procedural prerequisites for filing such actions under Venezuelan law. AGP's experts state that even if Montilla gathers the evidence requested, he cannot file either an Accounting or Annulment action in Venezuela. AGP's expert claims that having failed to timely complete necessary pre-filing steps for asserting these claims, Montilla lacks standing. Montilla's experts—one of whom is the lawyer identified in the Application as retained to file these lawsuits—disagree.

As to the proposed Accounting Action, Montilla's Application states he will pursue this action under Article 673 of the Code of Civil Procedure. AGP's experts state he cannot do so because there is no decision by the shareholder assembly to pursue an accounting action, and Montilla therefore lacks standing

---

[3] The court notes that based on the statements within Montilla's Application, and the stated purpose for needing discovery from AGP, the parties are apparently able to obtain and submit evidence to the Second Court in support of requesting a writ to annul an adverse SUNAVAL decision. But Montilla did not file his Application in this forum until more than 14 months after he appealed the SUNAVAL decision to the Second Court.

[4] Montilla argues the court should not consider the opinions of experts on Venezuelan law. ([Filing No. 22, at CM/ECF p. 2](Filing No. 22, at CM/ECF p. 2)). That is generally true, and nothing in this opinion should be construed as a comment on the underlying merits of the Venezuelan pending or anticipated Actions. That said, this court has reviewed and considered the expert declarations submitted by both parties to gain some understanding of the applicable Venezuelan tribunals and the matters assigned to those forums.

to do so. (Filing No. 10-2, at CM/ECF p. 9; Filing No. 10-3, at CM/ECF p. 7). Montilla's experts state he has standing to pursue the Accounting Action under Article 291 of the Venezuela Commerce Code. This court need not decide which experts are correct.

Article 291, cited as the basis for the opinions of Montilla's experts, is not cited in Montilla's Application as the legal basis for his anticipated Accounting Action. Montilla's experts, one of whom is retained to represent Montilla in the Accounting Action, have not explained the discrepancy between their opinions and the Application. I therefore find there is no showing that Montilla's Accounting Action against the Proagra and Protinal Board of Directors, or any of them, under Article 673 of the Code of Civil Procedure is "reasonably" contemplated.[5]

As to the proposed Annulment Action, Montilla's Application cites Article 45 of the Securities Market Act and Article 280 of the Commercial Code as the statutory basis for these claims. AGP's experts claim the request to annul stock transfers must first be presented to the SUNAVAL; Montilla's experts disagree, stating that under Venezuelan law, the sale of shares can be canceled under Articles 1090, 1091, 1092 and 1093 of the Commercial Code. Montilla's experts state "Any person who suffers an injury arising out of an illicit securities transaction can challenge directly the transfer of shares made by a public company before the commercial courts and can report the fact to SUNAVAL." (Filing No. 14-2, at CM/ECF p. 9).

---

[5] AGP's experts claim actions under Article 673 and under Article 291 are wholly distinct, and that an action under Article 291 cannot provide the remedy Montilla requests; that is, an accounting by and against the Directors of the Proagro and Protinal companies. (Filing No. 18-2, at CM/ECF p. 7).

10

Again, the court need not decide, and does not decide, the merits of Venezuelan law. Since this court is not versed in Venezuelan law, where the parties' experts disagree, it lacks the ability to decide whether Montilla has standing to pursue an Annulment Action in a Venezuelan tribunal and whether, based on the issue of standing, such a claim is reasonably contemplated. And I need not further consider this issue because as explained below, upon application of the Intel factors, I conclude the discovery should not be allowed. Intel, 542 U.S. at 265.

B.   The Intel Factors

Montilla already is a participant in the Administrative Action, and as to the Accounting and Annulment Action, the court assumes he will be a party. Contrary to AGP's argument, this court will not endorse a blanket statement that all judicial forums in Venezuela are corrupt and unlikely to accept evidentiary assistance from this court. The remaining questions under Intel are whether granting Montilla's Application will circumvent foreign proof-gathering restrictions or policies and whether the requested discovery is unduly intrusive or burdensome. Id.

At least as to the Annulment Action, Montilla's Application explains that litigation in the Venezuelan civil courts will include a discovery phase, including the opportunity to depose witnesses. (Filing No. 1, at CM/ECF p. 15). This Application statement appears to undermine his experts' claim that Montilla "needs the information requested in the federal court in Omaha from AGP" to file his Accounting and Annulment Actions because "[i]t is standard judicial practice in Venezuela for a plaintiff to attach most of its evidence to the complaint." (Filing No. 14-2, at CM/ECF p. 9 (emphasis added)). Moreover, as to the Administrative

11

Action, the Application in this forum would have no purpose if the evidence requested had to be filed with the writ of annulment to the Second Court. See infra, fn. 3.

Montilla's retained expert explains Montilla's Application for discovery in the United States must be granted because the ability to obtain such discovery in Venezuela is limited.

> Article 436 of the Venezuelan Code of Civil Procedure requires that a party already have a document, or knowledge of the data contained in the document, in order to obtain it from another party. Furthermore, the requesting party must have reason to know that the target of a discovery request actually possesses the document in order to be able to obtain it under the limited Venezuelan discovery rules. As such, this provision authorizes limited discovery in litigation in Venezuela.

(Filing No. 14-1, at CM/ECF p. 10). This argument advances the proverbial two-edged sword. On the one hand, Montilla claims he needs discovery under the authority of § 1782 because he cannot obtain it in Venezuela; on the other, he admits that even if AGP was subject to the jurisdiction of the Venezuelan courts, those courts would not permit the requested discovery.

Thus, it appears the discovery requests in Montilla's application extend beyond the discovery permitted under Venezuelan law. Montilla's Application, if granted, would permit Montilla to circumvent Venezuela's "proof-gathering restrictions or other policies." Intel, 542 U.S. at 265.

Moreover, the court must consider whether the discovery requested is "unduly intrusive or burdensome." Id. AGP argues that the discovery requests are extensive and as to much of it, unnecessarily so because if permitted by the Venezuelan forum, Montilla could obtain much of it from Proagra and Protinal.

12

AGP further argues that as to some of the discovery sought, AGP would be required to disclose confidential business information for use in, and potential dissemination by, a Venezuelan forum. Montilla argues he needs the discovery from AGP to assure he has all the information, and to the extent the information is confidential, this court could enter a protective order forbidding disclosure outside the Venezuelan proceedings.

Upon review of the discovery requests, the court finds the requests are extensive. See Filing No. 1, at CM/ECF pp. 17-20). Moreover, they encompass information that AGP would justifiably consider confidential business information under United States law; e.g., tax advice AGP received concerning share transfers, (Filing No. 1, at CM/ECF p. 18, ¶ g (x)); "Any profits secured by AGP in connection to sales made by any supplier to Proagro," (Filing No. 1, at CM/ECF p. 19, ¶ I (viii)). While the court could enter a protective order regarding this information, whether that order would or even could be enforced by a Venezuelan court is a complete unknown. And any enforcement of this court's protective order in Venezuela would require AGP, a third party to all three of Montilla's pending or contemplated Actions, to incur the extensive burden and expense of initiating legal proceedings in Venezuela.

Most striking is that as to much of the discovery, persons and entities within the jurisdiction of the Venezuelan courts—some of whom are (or as to the unfiled actions, will likely be) parties--could provide the information Montilla is asking AGP to produce. Inversiones 412, Proagro, Financop Casa de Bolsa, Intersec Casa de Bolsa, C.A., the Caracas Stock Exchange, the Venezuelan stockbroker, and many others listed within the voluminous discovery requests, are Venezuelan entities and persons. Montilla has failed to explain why these entities and persons within the jurisdiction of the Venezuelan courts cannot provide the requested testimony and documentation regarding, for example:

- AGP's communications with the Venezuelan entities and persons named in the discovery, (Filing No. 1, at CM/ECF pp. 17-19, ¶¶ 45 (a)(ii), (iv) & (v), 45(c), 45(g)(ii), (v) & (vi), 45(l)(iii), (iv), (v) & (vi));

- Communications between the Venezuelan entities and persons, (id, & Filing No. 1, at CM/ECF p. 18, ¶ 45(g)(3));

- Payments made and received (and documentation of such transactions) between the Venezuelan entities and persons, (Filing No. 1, at CM/ECF pp. 18-19, ¶¶ 45(g)(i), 45(k), 45(l)(i), (ii), (vii) & (ix));

- Documents related to the dissolution or liquidation of the trusts concerning Rios Enterprises, Mohedano Enterprises, Hupolo Enterprises and Sacrimont Limited, (Filing No. 1, at CM/ECF p. 18, ¶ 45(i));

- Correspondence regarding the basis of Proagra's financial statements, (Filing No. 1, at CM/ECF p. 18, ¶ 45(j));

- Documentation underlying the share sales and transfers at issue, (Filing No. 1, at CM/ECF p. 17, ¶¶ 45(a)(i), (iii) & (viii), 45(g)(i) & (iv)); and

- Minutes of Proagra's board resolutions or shareholders' meetings, (Filing No. 1, at CM/ECF p. 17-18, ¶¶ 45(a)(i) & (xi), (g)(xi), & (l)(vii)).

For the foregoing reasons, the court finds the extensive discovery requested in this case should be obtained from parties and Venezuelan entities or persons to the extent possible, without imposing that burden on AGP. As to most of the information requested, and potentially all of it, AGP is not the only source. Venezuelan entities and persons can provide it, but based on the record herein, have not been asked to do so—perhaps because a Venezuelan court would not permit such discovery. The discovery requests are therefore not only burdensome, but unduly so.

14

That burden is further enhanced because AGP has been asked to produce information that is, on the face of the request, considered confidential business information under United States law. And if such information is produced, even if subject to a protective order, AGP will need to subject itself to the jurisdiction of a Venezuelan court and litigate its confidentiality interests in that forum.

Accordingly,

IT IS ORDERED that Montilla's Application for discovery under 28 U.S.C. § 1782, (Filing No. 1), is denied.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge